### GEORGE WALKER *v.* WILLIAM H. PAINE.

A parol contract for the conveyance of real estate is void, insomuch that it cannot be enforced at law, if either party refuse to fulfill it.

But it is not *illegal*, nor is it void in such sense that the owner of the fee is— within the meaning of the act of 1851, "for the better security of mechanics and others"—the owner of a building erected on the land, in reliance upon such parol contract, by the person to whom the conveyance is thus agreed to be made.

Accordingly, where A., owning the fee of land, agrees by parol to ultimately convey it to B., and immediately to loan B. money to aid in erecting a building thereon; and the latter, accordingly, proceeds to erect such building; A. is not the owner of the building under the mechanics' lien law, so that his interest in the premises can be subjected to a lien for the value of work or materials furnished by third parties under the employment of B.

A sub-contractor, claiming a lien under that statute, must show *the existence of a contract* between his employer and the owner, and also—what is equally essential—that his work was done or materials furnished *in conformity therewith.*

The mere implied contract on the part of the owner, which may be inferred from suffering improvements to be made upon his premises, to pay what the same may be worth, with no stipulation or agreement as to the price or character of the improvements, is not sufficient to enable a laborer or material man employed by the builder, to acquire a lien under the statute. (a)

---

(a) NOTE BY REPORTER.—In the case of *James Berry* v. *John A. Weisse and wife,* recently pending in this court, the plaintiff sought to enforce a lien, under the

Where the person to whom materials were furnished, erects the building, in which they are used, on the faith of a parol contract, by the owner of the fee, to loan him money in aid of the construction, and finally to convey the premises to him; *held,* that (even regarding such parol contract to convey as utterly void) no contract, on the one hand to erect the building, and on the other to pay therefor, can be implied between the parties.

Nor can the relation of owner and contractor be inferred under such circum-

---

act of 1851, for the value of mason and carpenter work performed upon buildings belonging to the separate estate of the wife. The wife was made a party defendant with the husband, without the intervention of a next friend. Mr. Wm. R. Stafford appeared for the plaintiff; Mr. Edmund J. Porter and Mr. John S. Woodward, for the defendants.

The claimant had made preliminary estimates of the cost, but entered into no written contract with the defendants, nor with either of them, nor was there any verbal contract fixing the price or particulars of the work to be performed. He proceeded under a general employment by the husband, acting by the authority and as the agent of the wife, and executed the work within the knowledge and observation of both defendants. The work, as completed and accepted, was of the value of $12,000, for which the claimant filed the usual statutory notice to acquire a lien upon the buildings.

Issues having been joined upon complaint and answer, the cause was tried before Hon. MICHAEL ULSHOEFFER, as sole referee, who, after determining other points raised in the case, held, in substance, as follows:

1. That ordinarily, although no definite bargain be consummated between parties, yet, where labor is performed with the knowledge and at the request of a person, a binding contract to pay the fair value results as effectually as if a written contract, or a precise and particular verbal agreement, existed. But,

2. That such implied contract on the part of a husband and wife, to pay for improvements upon the separate estate of the wife, would not sustain a proceeding by a laborer or material man, to enforce a lien upon such separate estate, under the statute of 1851.

3. That to maintain the proceeding, there must have been (the referee intimates) an express written contract, executed by both the husband and wife, and acknowledged by the latter as a married woman, upon a private examination, apart from the former.

4. That judgment being sought against the wife, or against her separate estate, she should appear by a next friend.

5. That although, in the absence of any contract, an equitable suit may be devised to reach the estate of a married woman, especially for work and materials which have enhanced the value thereof, yet that the notice, filed with the county clerk, being the foundation of the action, and the complaint being adapted to the foreclosure of a lien, under this statute, upon the real estate of one of the defendants, who is a *feme covert,* the court, in giving judgment, can

stances, although the owner witnesses the progress of the building and advances money to the builder—such implication being contradicted by the tenor of the parol agreement itself.

In an action against the owner of a building to recover, under the lien law, the value of work or materials furnished *to a contractor*, there can be no personal judgment against the owner, but a mere foreclosure of the lien upon his interest in the premises, with a judgment directing the sale of such interest to pay the amount found due to the claimant, with the costs, as provided in the first section of the amendatory act, passed April 13, 1855. (a)

A personal judgment, thus erroneously entered against the owner, will be reversed on appeal.

Such error, however, applies to the *form* of the judgment, and may be remedied by the entry of a proper judgment in its stead, where the case shows the claimant entitled thereto.

GENERAL TERM, JULY, 1856.

THE evidence in this case disclosed the following facts.  In 1852, or early in 1853, the defendant, William H. Paine, made a valid written agreement to sell six lots, on the Fifth avenue, New York, to one Moses Larkin, and to advance money to aid him in improving the property, the purchase money and advances to remain, for a period, in part unpaid, and secured by bond and mortgage.  This agreement was performed, and in November, 1853, was completed ; when the defendant conveyed to Larkin the land and the buildings which he had erected, and the latter gave back a mortgage thereon for $15,000.

---

only grant the statutory remedies, if any, to which the plaintiff may be entitled, although the prayer of the complaint invokes relief from the general equity powers of the court.*

6. That in the present proceeding, no personal judgment against the wife, and no decree affecting her property, can be awarded.

7. That this was a proper case for the dismissal of the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, the defendant's counsel having moved for such dismissal and for a nonsuit, insisting that the facts alleged were not sufficient " to visit this alleged lien, pursuant to the notice filed," upon the separate property in question.

(a) See *Eagleson* v. *Clark*, December term, 1855, *ante*, p. 644 ; *Althause* v. *Warren*, June term, 1856, *ante*, p. 657.

---

* See *Quimby* v. *Sloan*, *ante*, p. 594, and *Jackson* v. *Sloan*, *ante*, p. 616.

Larkin, thereupon, requested the defendant, who owned three lots in 36th street, to make with him a similar agreement in respect thereto. The defendant refused, but verbally promised simply to convey the lots to him, at any time within a specified period, for $4,500 each, and at his request wrote this promise, in substance, upon a piece of paper and handed it to him. This memorandum was not subscribed with the defendant's name, and no written or formal contract to convey was entered into.

In the following spring, Larkin removed some old buildings from the three lots, and commenced the erection of three houses thereon, stating to a witness that they were for himself. After they were partially constructed, the defendant advanced, in aid of the work, $4,000 upon each house, in his notes, which were paid.

In the summer of 1854, the plaintiff, George Walker, pursuant to an agreement with Larkin, furnished and put into the buildings, with the defendant's knowledge, hot air furnaces and the fixtures belonging thereto. These, although not completely constructed, were of the value of $125 in each house.

Afterwards, in July, 1854, while the houses were in course of erection, Larkin, having expended from six to eight thousand dollars upon each, died insolvent.

Subsequently, but at what time after such death did not appear, the defendant himself completed the buildings and sold them, with the lots, for an amount less than the aggregate formed by adding together his advances, his expenses in completing the houses, and the sum mentioned in his parol promise to convey to Larkin.

On the sixth of December, 1854, the plaintiff filed with the county clerk a notice to create a lien upon the premises, against the defendant as the owner, and in May, 1855, served upon him a notice to appear in this court and submit to an accounting and settlement for the value of the work and materials furnished in partially constructing the furnaces. A bill of the particulars of the claim was also served. An order for the joining of issues having been entered, the cause

proceeded by complaint and answer, and was referred for trial to Mr. A. K. Hadley, who found for the plaintiff.

The referee's report contained a recital of the facts, stating, among other things, " It does not appear there was any *express* contract under which the buildings were so partially erected." The report concluded as follows:

" I further find· and decide as matters of law—that said parol agreement to convey said lots was null and void; that the said Moses Larkin was a contractor with the defendant for the building of said houses ; that the plaintiff, by virtue of a contract by said Larkin with the defendant—in pursuance of an agreement with Larkin—and in conformity with the terms of such contract, performed the labor and furnished the materials aforesaid to the value of $375, prior to December 6th, 1854 ; that the plaintiff is entitled to recover against the defendant the said sum of $375, and interest thereon, from the 6th day of December, 1854, amounting together, at the date of this my report, to $402 90, besides costs."

The defendant entered, upon the record, the following, with other grounds of exception, to the finding of the referee :

1st. That a parol agreement to sell the lots was not necessarily void.

2d. That the relation of contractor and owner between Larkin and the defendant was not created by the fact of Larkin's building upon land to which he had no legal title.

3d. That under no circumstances could the plaintiff have a judgment personally against the defendant, the statute only conferring a lien upon the building, and the interest in the lot of the owner of the building.

4th. That it appears from the testimony that Larkin was building the house upon his own account, as a speculation. That, therefore, it is impossible that a contract to build a house for the defendant can be deduced as a legal conclusion from the defendant's ownership of the land.

5th. That the referee, as a question of fact, should have found that the contract of the plaintiff was with Larkin alone.

In December, 1855, judgment was entered against the defendant, generally, as in ordinary cases, for $476 97, damages and costs.

From this judgment an appeal was prosecuted to the general term.

*Wm. C. R. English* and *Augustus W. Clason*, for the defendant, made and argued the following points:

I. A sub-contractor, furnishing materials in conformity with the terms of the contract, has a lien upon the building, and the interest of its owner in the lot, for any amount due under the contract to the contractor. He has no other right. An express contract between the owner and the contractor is indispensable, to entitle the sub-contractor to a lien. The mere fact of furnishing materials and labor is not enough. They must be in conformity with the contract.

II. The defendant agreed to sell Larkin his lots. His contract is not void, because a parol contract. (*Worrall v. Munn*, 1 Selden, 229.) Larkin wanted the defendant bound. The inference is, as Larkin was satisfied, that he was bound.

III. But an invalid agreement to sell is not a valid contract to build. The referee finds, as a matter of fact, that there was no express contract to build; from which he deduces the conclusion of law, that the defendant not only contracted with Larkin to build, but that the agreement between Larkin and the plaintiff was in conformity to the contract which he had implied, an allegation which even the plaintiff does not make in his complaint.

There was testimony furnished by the plaintiff which renders it impossible to infer a contract to build between Larkin and the defendant. His foreman proved that Larkin was building for himself.

*B. C. Thayer* and *Levi S. Chatfield*, for the plaintiff, made and argued the following points:

I. The proceedings of the plaintiff to perfect his lien, under the statute, are admitted to be regular. The only question

raised on the trial was, whether the defendant or Larkin was to be deemed the *owner* of the premises, at the time the plaintiff furnished the labor and materials for which the action is brought.

It is conceded, that to sustain the lien it must appear that the defendant was the *owner* of the premises, and some contract must have existed between him and Larkin, the builder. The statute (Laws of 1851, p. 953, § 1) does not require this contract to be *written* or *special*. The language of the act is: "Any person who shall hereafter, by virtue of any contract," &c. This language is broad, and was manifestly intended to cover any contract which could be enforced at law, and implied contracts are clearly contemplated in the third section of the act.

Unless there was a valid and binding contract of sale between Larkin and the defendant, the law implies a contract on the part of the defendant to pay Larkin for the labor and materials expended on the lots. The plaintiff insists that there was *no* such contract.

1. As matter of fact, no contract of sale was made between Larkin and Paine. The most that is shown is, that the defendant told Larkin that on paying $4,500 per lot, at any time between that time and the first of May thereafter, he could have the lots. Larkin said nothing. Surely this is no contract.

2. As matter of law, if Larkin had agreed to the terms proposed, no contract of sale would exist, for such an agreement is void by statute. (2 R. S. 3d ed. 194, § 8; *Coles* v. *Browne*, 10 Paige, 534; *Lawrence* v. *Taylor*, 5 Hill, 107; Com. on Contracts, 67; *Rickard* v. *Stanton*, 16 Wend. 25; *Thayer* v. *Rock*, 13 Wend. 53; *Worrall* v. *Munn*, 1 Seld. 229.) In *Loonie* v. *Hogan*, in the Court of Appeals, (*a*) *Dixon* v. *La Farge*, 1 E. D. Smith, 722; *Gay* v. *Brown*, Ib. 725; and *Pendleburg* v. *Mead*, Ib. 728,) there were good and valid written contracts of sale, and the court held that the

(*a*) See *post*, p. 681.

purchaser in the contract was the *owner* for the purposes of the act, and those cases are all distinguishable from this case, for here there was no contract.

II. There being no express contract shown, does the law imply one? 1. Larkin is shown to be at work on the lots, and expending money on them. 2. Paine is shown to have known what Larkin was doing, and gave him $12,000 in money to go on with the work. 3. After Larkin's death, Paine sold the lots, with the houses erected by Larkin.

Under such circumstances, the law raises *quantum meruit*, by which Paine was liable for the reasonable value of the labor and materials; or, in other words, the law says Paine agreed to pay what the labor and materials were reasonably worth, and this is a good contract. (*James* v. *Bixby*, 11 Mass. 34; *Farmington, &c.* v. *Allen*, 14 Mass. 174; Comyn on Cont. 4 & 5; *Jacobson* v. *Lagrange*, 3 Johns. 199; *Martin* v. *Wright*, 13 Wend. 460; *Jewel* v. *Scroeppel*, 4 Cow. 564; *Livingston* v. *Ackerton*, 5 Cow. 531.)

The conditions of the lien law are therefore answered, and the plaintiff was entitled to recover.

By THE COURT. INGRAHAM, FIRST J.—This action is brought against the defendant, as owner of certain lots, on which houses were built by the plaintiff. The defendant is sought to be made liable under the provisions of the mechanics' lien law.

The referee finds that the defendant was the owner of the lots on Thirty-sixth street. That Moses Larkin applied for a contract of sale of the lots, which the defendant declined to give, but made a parol agreement to convey to Larkin the lots upon payment to him of a fixed price.

That the defendant advanced to Larkin his notes to aid in the erection of the buildings.

That Larkin died insolvent during the progress of the buildings.

That no express contract for the erection of the buildings was proved.

That the defendant sold the lots and the partially erected buildings, and received payment therefor, but that such payment did not repay the advances made by him and the price of the lots, with the moneys necessary to complete the same.

And he finds, as *matter of law*, that Larkin was a contractor with the defendant for the erection of the buildings, and that the work was done by the plaintiff in conformity with the contract with the defendant, and he renders judgment for the plaintiff.

*First.* The judgment is clearly erroneous. The statute of 1855, page 760, sec. 1, directs, that in such a case, the judgment shall direct the sale of the interest of the owner in the land and premises at the time of filing the notice of lien. Where the action is brought by a person doing the work for a contractor against the owner, there can be no personal judgment against the owner, but a mere foreclosure of the lien upon his interest in the land, with a judgment directing the sale of such interest to pay the amount so found to be due.

The judgment entered up is a personal judgment against the owner, and is of course erroneous, and must be reversed.

But as this only applies to the form of the judgment, which might be remedied by the entry of a new judgment on the referee's report, it is necessary to examine the question of the defendant's liability in any event under the facts proven.

*Second.* The referee has found, as *matter of fact*, that the buildings were not erected under any express contract, and yet he finds, as *matter of law*, that Larkin was a contractor with the owner for the erection of the buildings, and that the work was done in conformity with the terms of the contract. I am at a loss to see how work can be done in conformity with the terms of a contract, when no express contract is proven.

With the exception of the contract for the sale of the lots being by parol, this case does not differ in principle from others that have been before this court. In *Doughty* v. *Devlin*, 1 E. D. Smith's Rep. p. 625, we held that the right

of a sub-contractor to recover against the owner depended upon the fact of the work done by him having been in conformity with a contract made by the owner for the erection of the building. In *Loonie* v. *Hogan*, N. Y. C. P., 1 E. D. Smith, p. 652, *note*, it was held that an owner agreeing to sell lots to another, was not chargeable under the lien law.

And in the opinion in the Court of Appeals sustaining this decision and overruling the case in the Supreme Court, (11 Barb. S. C. p. 9,) Judge DENIO says: "The money which the plaintiff seeks to obtain is money agreed to be loaned, and not a debt agreed to be paid. "It is only the latter to which the statute refers. "If public policy or the just interests of the mechanic require that the remedy should be extended so as to embrace the case of money agreed to be advanced otherwise than by a party contracting to have a building erected for himself, it is for the legislature to provide for such cases by new enactments." Although this case arose under the act of 1830, still the provisions of that statute are similar, so far as relates to this question, to that of 1851; and in *Gay* v. *Brown*, 1 E. D. Smith, 725, the principles of that decision were applied to a case arising under the statute of 1851, and the same construction given to the latter.

In the case last mentioned, Judge WOODRUFF says: "He (the plaintiff) did not prove that the work performed by him was done in conformity with any contract with the defendant. "This was essential to his right to recover. "The contract which he offered showed that the defendant was not the *owner* within the meaning of the law."

The referee appears to have based his decision upon the supposed illegality of the contract of sale by the owner to Larkin. Although that contract (being by parol) could not have been enforced at law if the owner refused to fulfill it, still there was nothing in the contract rendering it *illegal*. If the parties were willing to carry it out, no other person could object thereto, and no other person could take advantage of the omission to commit the contract to writing, so as to charge the defendant, under the mechanics' lien law, as

the owner of a building erected on the land by Larkin, for his own use, on the faith of the parol agreement, and in the consequent expectation of receiving a conveyance of the premises in pursuance thereof.

And even conceding that the contract for the sale of the lots was entirely void, still the difficulty remains. There was no contract between Larkin and the defendant that Larkin should build houses on the lots for the defendant, nor is it proven that the work the plaintiff claims for was in conformity with the terms of any contract whatever.

Where does it appear in the evidence in this case, that, by any contract with the defendant, hot air furnaces were to be put in any of the houses? If we could imply the existence of a contract, because the parol agreement to sell the lots was not binding, (which is by no means conceded,) still there is no evidence to show that these furnaces were not ordered by Larkin on his own suggestion, and formed no part of the original plan on which the houses were to be erected.

It is just as necessary that the work claimed for by a sub-contractor should be done in conformity with the contract with the owner, as specified therein, as it is to show that such a contract existed.

Neither of these facts was proven in this case, and it was necessary to prove both to sustain the plaintiff's cause of action.

By the statute, the liability of the owner is limited to the amount stipulated to be paid in the contract. Where there is a mere implied contract to pay what the work is worth, without any sum or price, the statute would not apply.

It is said that Paine might have been held liable to Larkin for the value of these houses if the contract for the sale of the lots was void, in consequence of his seeing the buildings in progress without objection and advancing money therefor. In this case, however, that could not be the result. The facts proven would prevent any such implied agreement, because it is in evidence that there was a positive agreement that the buildings should belong to Larkin, and that the land

should be conveyed to him on payment therefor. It is immaterial whether such contract of sale was valid or not. It is enough to prevent any implied agreement being found that the defendant would pay for them. No such agreement could be implied in contradiction to an express agreement to the contrary.

The report of the referee on this point is erroneous, and upon both grounds stated above, the judgment should be reversed.

Judgment reversed.